Fort Howard Paper Company, Respondent, vs. Paper Converting Machine Company, Appellant.

*October 15—November 9, 1937.*

For the appellant there were briefs by *Casanave Young* and *John M. O'Brien,* and oral argument by *T. J. Christman,* all of Milwaukee.

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Chas. B. Quarles* and *James P. Hume* of counsel, all of Milwaukee, and oral argument by *Mr. Quarles* and *Mr. Hume.*

ROSENBERRY, C. J. The facts as found by the court are briefly as follows: The plaintiff, a Wisconsin corporation, is engaged in the manufacture and sale of folded paper napkins, and is the owner of certain inventions and letters patent relating thereto. On October 29, 1924, the plaintiff adopted the trade-mark "Havanap," which it applied to paper napkins manufactured by it, said trade-mark being duly registered. Prior to June 21, 1927, plaintiff manufactured and sold on the market a napkin referred to as "Cornucopia." The plaintiff prior to May, 1925, also manufactured and sold a napkin called "Havanap." The plaintiff since 1925 and continuously to the present time manufactured and sold another fold of napkin called "Havanap," which form was substituted on the market for its previous "Havanap" napkin. Commencing on January 2, 1928, the plaintiff has manufactured and sold napkins of the three types described in letters patent No. 1,863,391, which napkin was and has continuously been known on the market by the trade name of "Havanap."

The defendant has been and is now engaged in the manufacture and sale of paper-processing machines. Prior to

January 21, 1927, the defendant was commercially engaged in the manufacture and sale of machines and attachments for machines for folding paper napkins of the type known as "Quarter Folded Sheets." Prior to June 21, 1927, defendant manufactured and sold machines for folding paper napkins of the type then known as the "Triangle Fold." Prior to June 21, 1927, the plaintiff notified the defendant that the manufacture and sale of certain of its machines constituted an infringement of plaintiff's letters patent No. 1,520,312, issued December 3, 1924.

The parties after negotiations entered into an agreement in writing, by which it was agreed, among other things, that the plaintiff granted the defendant a license—

"to make, use and sell, throughout the territory of the United States and the territories thereof, machines embodying the invention described and claimed in patent No. 1,520,312, or any reissue thereof, for producing quarter folded sheets and quarter folded sheets having one or both corners of the quarter fold folded upon said quarter fold after the manner shown and described in patent No. 1,505,087, granted to Peter J. Christman on August 19, 1924; it being particularly agreed between the parties hereto that this license does not extend to machines or attachments to machines for producing 'Cornucopia' folded sheets, or sheets the crease lines of which outline a star, or sheets known to the trade as the 'Havanap' fold now being produced and sold by the party of the first part;

"In further consideration of this agreement, the party of the second part agrees not to make, use or sell any machines or attachments to machines for producing 'Cornucopia' folded sheets the crease lines upon which outline a star shaped figure, or folded sheets of the 'Havanap' form above referred to or modification thereof."

Prior to June 21, 1927, the defendant manufactured and sold machines and attachments therefor for producing paper napkins known as "Quarter Folded Sheets"—also machines for folding paper napkins known as "Quarter folded sheets having one or both corners folded," and had not made ma-

chines or attachments therefor for producing rectangular folded napkins having dispensing tabs provided thereon, such as are adapted to be dispensed from a rectangular napkin dispensing container. The court found that between December 21, 1928, and January 14, 1931, the defendant manufactured and sold machines designed to produce napkins to be dispensed from containers manufactured and furnished to the trade by the plaintiff.

After setting out specifically by reference to exhibits the type of napkin produced by said machines, the court held that the agreement, the material part of which has been set out, was clear, without ambiguity, and that by said agreement the parties intended to confine or limit defendant company to the manufacture of machines that would not produce folded paper napkins of an oblong rectangular shape, with a dispensing tab of the type of the "Havanap" napkin; that napkins produced by defendant's machines are not folded in the same manner as plaintiff's "Havanap" napkin, but they all possess the same essential characteristics and the differences reside in noncharacterizing features.

The court concluded as a matter of law that the contract forbade the defendant company from manufacturing for sale and selling machines whose purpose is to make napkins of the "Havanap" type, or napkins which have an oblong rectangular shape with a dispensing tab on one external face thereof; that the expression "folded sheets of the 'Havanap' form above referred to or modification thereof," as employed in the contract between the parties, means and includes all napkins which are rectangular in shape and with a dispensing tab on one face thereof.

A mere reading of the restrictive provision indicates that it is much wider in scope than the licensing provisions contained in the preceding paragraph. The restrictive provision does not say that the defendant agrees not to make, use, or sell any machines or attachments for machines for the pur-

poses named which embody the principles protected by plaintiff's patent. The defendant is not to make, use, or sell any machines or attachments to machines however constructed or upon whatever principle constructed which do the things that it agrees not to do.

The defendant contends that, if the contract be construed as the trial court construed it, it is against public policy and unenforceable. The difficulty with defendant's contention in that regard is that no such issue was made by the pleadings. The defendant stipulated that the sole issue in the case was the interpretation of the restrictive clause which could be construed in only one of two ways. If the defendant intended to litigate the questions it now seeks to raise, it should have framed its pleadings accordingly.

Nor do we need to consider the legality or illegality of the contract as entering into the problem of interpretation. It is only when a contract is ambiguous and fairly open to two constructions that the principle contended for by the defendant has any application. *Pulp Wood Co. v. Green Bay P. & F. Co.* (1914) 157 Wis. 604, 147 N. W. 1058. Here, as the trial court held, the contract is without ambiguity. Apparently the defendant wanted to speculate by pressing the interpretation it contended for upon the court without raising other issues in the hope that, if it was defeated in its first stand, it might thereafter present its second or alternative position. The defendant's strategy consisted of a series of retreats from one position to another if it did not succeed in holding its first position. Sec. 263.16, Stats., provides that a defendant may set forth in its answer all the defenses it has. It does not provide that it may do this by successive amendments. It is considered that the trial court correctly construed the contract.

The matter having been submitted to the trial court, and the court having made and filed its findings of fact and conclusions of law, the defendant moved to set aside the find-

ings, conclusions, and judgment, and to have an issue made and tried on the question of reformation, and in the alternative for findings and judgment in its favor. The trial court filed a second decision in which the court said:

"The court is of the opinion that at this date—after judgment—to inject new issues is to practically inject new issues in a cause of action that has been tried and determined. The court believes it must and should give full weight to the stipulation of the parties."

The trial court did not, as defendant contends, deny the motion on the ground that it did not have power to grant it, but held in the exercise of a sound discretion the defendant should not be permitted to retry a case that has once been tried and determined. This determination was certainly well within the limits of the trial court's discretion, and for that reason cannot be disturbed. *Kennan v. Smith* (1902), 115 Wis. 463, 91 N. W. 986.

A number of matters are argued which more properly concern questions that will arise upon the assessment of damages, and they will not be considered here for that reason.

*By the Court.*—Judgment affirmed.